**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RAYMOND B. SKELTON, | : | |
| | : | Civil Action No. 09-234(FLW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE R. RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

    RAYMOND B. SKELTON, Petitioner <u>pro</u> <u>se</u>
    #287070
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

    MARY R. JULIANO, ASSISTANT PROSECUTOR
    MONMOUTH COUNTY PROSECUTOR'S OFFICE
    Monmouth County Courthouse
    71 Monument Park
    Freehold, New Jersey 07728-1789
    Counsel for Respondents

**WOLFSON**, District Judge

    Petitioner Raymond B. Skelton, a convicted state prisoner
currently confined at the New Jersey State Prison in Trenton, New
Jersey, has submitted a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging his 1996 New Jersey
state court conviction and sentence.  For the reasons stated
herein, the Petition will be dismissed as time-barred.

I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This matter arises out of the 1998 New Jersey state court conviction of petitioner Raymond B. Skelton ("Skelton") on three counts of aggravated sexual assault as well as other counts of lesser degree sexual offenses involving six young male victims, between the dates of 1986 and 1994, at several residences in which Skelton lived in Monmouth and Middlesex Counties, New Jersey.

On February 24, 1995, the Monmouth County Grand Jury indicted Skelton on the following 32 charges: five counts of first degree aggravated sexual assault, in violation of <u>N.J.S.A.</u> 2C:14-2a(1); three counts of second degree attempted aggravated sexual assault, in violation of <u>N.J.S.A.</u> 2C:5-1 and 2C:14-2a(1); seven counts of second degree sexual assault, in violation of <u>N.J.S.A.</u> 2C:14-2b; one count of second degree sexual assault, in violation of <u>N.J.S.A.</u> 2C:14-2c(4); eight counts of second degree endangering the welfare of a minor, in violation of <u>N.J.S.A.</u> 2C:24-4a; two counts of third degree aggravated criminal sexual contact, in violation of <u>N.J.S.A.</u> 2C:12-3a; two counts of fourth degree forgery, in violation of <u>N.J.S.A.</u> 2C:21-1a; two counts of third degree unlawful possession of a handgun, in violation of <u>N.J.S.A.</u> 2C:39-5b; and two counts of fourth degree unlawful disposition of a firearm, in violation of <u>N.J.S.A.</u> 2C:39-9d.

Before trial, the two forgery counts were severed, and from May 29 through June 7, 1996, Skelton was tried on the remaining counts before a jury and the Honorable John P. Arnone, J.S.C., in the Superior Court of New Jersey, Law Division, Monmouth County. Before submitting the case to the jury for deliberation, Judge Arnone dismissed six counts.  The jury acquitted Skelton of two of the first degree aggravated sexual assault charges, but found him guilty of the remaining counts.

On December 17, 1996, Judge Arnone sentenced Skelton to an aggregate term of 60 years in prison with 30 years parole ineligibility.

On February 18, 1997, Skelton filed a direct appeal to the Superior Court of New Jersey, Appellate Division.  On October 21, 1998, the Appellate Division affirmed the conviction and sentence.  The Supreme Court of New Jersey denied certification on January 21, 1999.  State v. R.S., 157 N.J. 646 (1999). Skelton did not file a petition for a writ of certiorari with the Supreme Court of the United States.

On December 17, 2001, the last date on which a petition could be filed under New Jersey Court Rules, a verified petition for post-conviction relief ("PCR") was filed in state court on Skelton's behalf.  However, Skelton contends that he had prepared a pro se PCR petition, signed and notarized on February 24, 1999, which he mailed in a letter dated March 23, 1999, to the local

3

Public Defender's Office for filing.  (Petitioner's Appendix "Pa" at 1a-43a, Docket entry no. 4-1).  In a series of letters to the Public Defender's Office for more than two years, Skelton contends that he continued to ask that his PCR petition be filed and complained that a number of attorneys had failed to contact him or take any action on his behalf.  The PCR petition actually filed was not the PCR petition that he had prepared in February 1999.

Skelton was appointed counsel, and with the assistance of appointed counsel, Skelton filed an amended PCR petition on or about June 24, 2005.  The PCR petition asserted various grounds of ineffective assistance of trial and appellate counsel. On October 27, 2006, the Honorable Francis P. DeStefano, J.S.C., held a non-evidentiary hearing for oral argument on the claims asserted in the PCR petition.  The court then issued a written decision denying the PCR petition.

On December 4, 2006, Skelton filed an appeal from denial of his state PCR petition.  On June 20, 2008, the Appellate Division affirmed denial of the PCR petition.  The Supreme Court of New Jersey denied certification on September 24, 2008.

On January 12, 2009,[1] Skelton filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He thereafter filed a Memorandum of Law in support of his petition on or about May 20, 2009.  (Docket entry no. 4).  Respondents filed their answer and amended answer to the petition, together with the relevant state court record, on November 23 and 24, 2009. Skelton filed a reply on January 21, 2010, and later filed a motion for an evidentiary hearing on September 1, 2010. Respondents opposed the motion by letter brief on September 20, 2010.

## II.  STATEMENT OF CLAIMS

Skelton raises claims of ineffective assistance of trial and appellate counsel.  He also submits that equitable tolling should apply in deeming his habeas petition timely filed because of

---

[1]  Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1988) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine the exact date that Skelton handed his petition to prison officials for mailing, he signed a certification of his petition on January 12, 2009.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1988) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, the Court finds that January 12, 2009 was the date this petition was filed for purposes of calculating the timeliness of the petition, and not the date the petition was received by the Clerk of the Court on January 14, 2009, and clearly not the date of May 4, 2009 as suggested by respondents.

alleged attorney misconduct in belatedly filing petitioner's state PCR petition.

The State argues that the habeas petition is untimely and should be dismissed as time-barred, or alternatively, that Skelton's petition should be denied for lack of substantive merit.

## III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Because petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

## IV.   STATUTE OF LIMITATIONS ANALYSIS

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Section 2244(d) became effective on April 24, 1996 when the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law.  See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998); Duarte v. Herschberger, 947 F. Supp. 146, 147 (D.N.J. 1996).  The Third Circuit has ruled that state prisoners whose convictions became final before the April 24, 1996 enactment of AEDPA are permitted one year, until April 23, 1997, in which to file a federal habeas petition under § 2254.  See Burns, 134 F.3d at 111.  See also Lindh v. Murphy, 521 U.S. 320, 326-27 (1997)("[t]he statute reveals Congress' intent to apply the amendments to chapter 153 only to such cases as were filed after the statute's enactment").

Thus, pursuant to § 2244(d), evaluation of the timeliness of a § 2254 petition requires a determination of, first, when the pertinent judgment became "final," and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."

A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417,

419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

As noted above, where a conviction became final prior to April 24, 1996, the effective date of § 2244(d), a state prisoner has a one-year grace period after that effective date to file a § 2254 petition. Burns, 134 F.3d at 111. However, that limitations period is tolled during the time a properly filed application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2). An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled, from the time it is "properly filed,"[2] during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24. Nevertheless, § 2244(d)(2) does not toll the one year statute of limitations during the pendency of a state prisoner's petition

---

[2] An application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally. But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar. Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (footnotes and citations omitted).

for writ of certiorari in the United States Supreme Court.  <u>See</u>
<u>Lawrence v. Florida</u>, 549 U.S. 327, 332-33 (2007);  <u>Stokes v.</u>
<u>District Attorney of the County of Philadelphia</u>, 247 F.3d 539,
542 (3d Cir.), <u>cert. denied</u>, 534 U.S. 959 (2001).

Here, Skelton's judgment of conviction became final after
the  enactment of AEDPA.  His judgment of conviction was entered
on December 17, 1996, and Skelton promptly filed a direct appeal
on February 18, 1997.  The Appellate Division affirmed the
conviction and sentence on October 21, 1998, and the Supreme
Court of New Jersey denied certification on January 21, 1999.
Thus, direct review became final under § 2244(d)(1), 90 days
after January 21, 1999, or on April 21, 1999.  <u>See</u> <u>Swartz</u>, 204
F.3d at 419; <u>Morris</u>, 187 F.3d at 337 n.1; <u>U.S. Sup. Ct. R.</u> 13.
Skelton then had one year from April 21, 1999, or until April 21,
2000, to file his federal habeas petition under § 2254.  The
parties do not dispute that April 21, 2000 was the date Skelton's
conviction became final and the statutory period started to run.

To permit tolling of the one-year limitations period under
28 U.S.C. § 2244(d)(2), Skelton would have had to file his state
PCR petition before the one-year period had expired, or before
April 21, 2000.  Otherwise, the state PCR petition would not
serve to toll the statute of limitations.  In this case,
Skelton's state PCR petition was filed on December 17, 2001, more
than one year after the statute of limitations had expired on

9

April 21, 2000.  Thus, this Court finds that there was no statutory tolling of the limitations period in this case.

However, Skelton argues that he can overcome this statutory time bar because he is entitled to equitable tolling.  See Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998).  Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Lawrence, 549 U.S. at 336; Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005); Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003).

The Third Circuit instructs that equitable tolling is appropriate when "principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims."  LaCava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005).  However, the court cautioned that courts should use the equitable tolling doctrine "sparingly," "only in the rare situation where it is demanded by sound legal principles as well as the interest of justice."  Lacava, 398 F.3d at 275 (3d Cir. 2005).  A mere

showing of "excusable neglect is not sufficient" to warrant equitable tolling.  Id. at 276; Miller, 145 F.3d at 618-19; Jones, 195 F.3d at 159.

Extraordinary circumstances permitting equitable tolling have been found where:  (1) the petitioner has been actively misled; (2) the petitioner has been prevented from asserting his rights in some extraordinary way; (3) the petitioner timely asserted his rights in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir.), cert. denied, 546 U.S. 957 (2005).[3]  Even where extraordinary circumstances exist, however, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  Brown v. Shannon, 322 F.3d 768, 773 (3d Cir.)(quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)), cert. denied, 539 U.S. 948 (2003).

In this case, Skelton alleges that he had prepared a state PCR petition, signed it, and had it notarized on February 24,

---

[3]  The Third Circuit has expressly held that, in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes are not the extraordinary circumstances necessary to establish equitable tolling.  Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002), cert. denied 538 U.S. 1022 (2003); Fahy, 240 F.3d at 244.

1999.  (Pa 2a-43a).  He then sent it, under cover of a letter
dated March 23, 1999,[4] to the Monmouth County Public Defender's
Office, asking that the PCR motion be filed with the County
Clerk's Office and a copy stamped filed be sent to Skelton for
his records.  (Pa 1a).  Inexplicably, in a letter with a typed
date of March 16, 1999, which predates the March 23, 1999 letter
to the Monmouth County Public Defender's Office enclosing the PCR
petition drafted by Skelton, Skelton wrote to State Public
Defender, Ms. Ivelisse Torres, of the Office of the Public
Defender in Trenton, New Jersey, stating that Skelton had filed a
PCR motion in Monmouth County and asked that he be assigned an
attorney outside of Monmouth County because Monmouth County
public defenders may likely be called as witnesses in the PCR
proceeding alleging claims of ineffective assistance of counsel.
(Pa 45a-46a).

     Periodically, after Skelton sent his March 23, 1999 letter
asking that his state PCR petition be filed, Skelton wrote four
letters to counsel inquiring about the status of his case before
the April 21, 2000 statutory deadline expired.  First, on April
28, 1999, Skelton wrote to the Public Defender's Office in
Monmouth County requesting that his PCR motion, sent to it on
March 23, 1999, be filed with a duplicate copy to be returned to
Skelton for his records.  (Pa 50a).  In that same letter, Skelton
reminded counsel of the one-year limitations period for filing a

_____

     [4]  The Court notes that the date of March 23 had been
handwritten over an unidentifiable typed date of March 1999.

federal habeas petition, which "gives cause to file the PCR posthaste." (Pa 50a).

 Skelton next wrote to Ms. Torres on May 11, 1999, expressing concern that the Public Defender's Office had not confirmed that his PCR motion was received after six weeks had elapsed.  Skelton stated that "it is unjustifiable" that the Public Defender's Office would ignore the communications from a person they are supposed to represent and not inform a client as to the receipt of legal documents and status of a case.  (Pa 52a-53a).

On January 6, 2000, Skelton wrote to attorney Vernon Estreicher, Esq., who had been assigned petitioner's case, to strongly complain that it had been nine months since his PCR petition had been mailed and eight months since Estreicher had been assigned the case, and Skelton still had not been informed as to the filing of his petition.  Skelton rebuked counsel for counsel's lack of communication with petitioner and asked that Estreicher remove himself as counsel.  (Pa 56a-57a).

Accordingly, on January 20, 2000, Skelton's PCR case was re-assigned to a private attorney, Bryan F. Ferrick, Esq., who likewise failed to communicate with Skelton.  (Pa 58a, 59a, 63a).  Petitioner later learned that Ferrick had been suspended from the practice of law.  (Pa 78a).  On March 16, 2000, the case was re-assigned to James Kinarney, Esq.  (Pa 62a).  On April 5, 2000, Skelton wrote to attorney Theodore Fishman, Esq. at the Monmouth

County Public Defender's Office to complain of a potential conflict in Kinarney's representation, and asking for a re-assignment of petitioner's case.  In his April 5, 2000 letter, Skelton reiterated his complaint about the lack of communication with counsel up to this point.  He also noted that he had requested by telephone that attorney Ferrick return to petitioner his file, but Ferrick had not done so, and thus, Skelton was contemplating bringing an ethics complaint against the attorney. (Pa 63a-65a).

Fishman responded to Skelton in a letter dated April 14, 2000, to say that Kinarney would remain on the case.  (Pa 66a). On June 27, 2000, after the April 21, 2000 statute of limitations had passed, Fishman wrote to Skelton to inform him that Kinarney was off the case and another attorney would be located to represent him.  (Pa 68a).

On June 29, 2000, the case was assigned to Michael D'Alessandro, Esq., but by August 21, 2000, D'Alessandro was removed after Skelton had complained that the attorney had not contacted petitioner.  Apparently, Skelton had written to D'Allesandro on July 10, 2000, to complain that Skelton had received no communication from D'Allesandro since his assignment to the case.  Skelton's July 10, 2000 letter was sent to Fishman. (Pa 71a).  On October 31, 2000, the case was assigned to Jack Gerber, Esq., who quickly returned the file.  (Pa 72a-73a).  On November 15, 2000, the file was assigned to Strazza, (Pa 74a-

75a), who did not file a PCR petition until more than a year later on December 17, 2001.

Skelton attaches only two other letter inquiries he made to counsel after the April 21, 2000 statutory deadline had passed. For instance, on October 12, 2001, more than a year after the statutory deadline had passed, Skelton wrote to Fishman enclosing two letters (not attached with his petition) he had written to attorney Strazza in which he complains about Strazza's failure to communicate with petitioner.  He reiterates to Fishman the lack of communication from Strazza for ten months, in failing to apprise Skelton as to the progress of his pending PCR petition. (Pa 76a).  On December 11, 2001, Skelton wrote to Torres complaining about the lack of response he has received from Strazza or Fishman concerning his case and the "epistles" he "penned" to them.  (Pa 77a).

Skelton attaches a memo dated January 28, 2002 from Fishman to Diana Johnston, which calls the case a "nightmare" and notes that Skelton has had six different attorneys.  (Pa 78a).

The State does not appreciably dispute Skelton's chronology of events as set forth above.  However, the State does argue that despite Skelton's allegations of attorney misconduct, Skelton fails to show extraordinary circumstances sufficient to warrant equitable tolling.  The State relies substantially on Schlueter v. Varner, 384 F.3d 69 (3d Cir. 2004), cert. denied, 544 U.S.

1037 (2005), in support of its defense that the petition is time-barred and equitable tolling does not apply.

As a general rule, miscalculation of the remaining time on a limitations period does not constitute extraordinary circumstances to permit equitable tolling. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); see also Johnson v. Hendricks, 314 F.3d 159, 161, 163 (3d Cir. 2002), cert. denied, 538 U.S. 1022 (2003). Moreover, in a non-capital case such as this, "attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation." Schlueter, 384 F.3d at 76. See also Lawrence, 549 U.S. at 336-37 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel").

However, Skelton's argument for equitable tolling transcends a claim of mere miscalculation of the statute of limitations. Rather, based on the factual history set forth above, Skelton contends that the serious PCR attorney misconduct in his case, which amounted to an abandonment of Skelton's PCR petition, was so extraordinary as to warrant equitable relief from the statutory time bar in this case.

Nevertheless, in making this argument for equitable tolling based on attorney misconduct, Skelton still must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely

16

filing." See Lawrence, 549 U.S. at 336.  In this regard, Skelton first argues that he was reasonably diligent because he repeatedly implored his assigned counsel to take some action after he sent a PCR petition to the Public Defender's Office.  He points to Seitzinger v. Reading Hosp. and Medical Center, 165 F.3d 236 (3d Cir. 1999), in support of his argument.  However, the facts in Seitzinger are easily distinguishable.  The Third Circuit found that the Seitzinger was not a case of "garden variety attorney neglect":

> Sloane's level of misbehavior went well beyond the garden variety, because Sloane affirmatively lied to his client. When she called Sloane in early September to check on the status of the complaint, Sloane assured her that he had filed it, when in fact he had not.  In addition, he promised her a number of times that he would send or had sent her a copy of the complaint, yet he never did.  We agree with the Hospital that the mere fact that counsel failed to file the complaint in a timely manner probably constitutes garden variety neglect.  But his affirmative misrepresentations to his client about the very filing at issue here rise above that standard.  The Supreme Court's declaration in Irwin that garden variety attorney neglect is an insufficient reason to invoke equitable tolling therefore does not control the outcome in this case.

Seitzinger, 165 F.3d at 241.

In contrast here, there was no affirmative lie or communication by any of the assigned counsel to Skelton that his PCR petition had been filed.  In fact, the opposite appears true from the facts alleged by Skelton.  There simply was no communication at all by his assigned attorneys that could have reasonably misled Skelton to believe that his petition had been filed, especially when he kept seeking confirmation that it had

been filed and no response to this effect was forthcoming from counsel.  Consequently, the factual circumstances in this case do not show affirmative misrepresentations as found in Seitzinger, that would be sufficient to invoke equitable tolling on plain attorney neglect.

This Court also finds Skelton's reliance on Nara v. Frank, 264 F.3d 310 (3d Cir. 2001), overruled on o.g. by Carey v. Saffold, 536 U.S. 214 (2002), to be misplaced.  In Nara, the Third Circuit reversed an order dismissing a habeas petition as time-barred and ordered that the district court conduct an evidentiary hearing on the issue of statutory tolling on several grounds.  Namely, the Nara petitioner had presented evidence of his "ongoing, if not consecutive, periods of mental incompetency," and he had listed multiple acts of his attorney that allegedly prejudiced him, including (1) her failure to inform him when the state supreme court denied review; (2) her refusal to remove herself as appointed counsel after the supreme court decision, thereby preventing petitioner from moving his case forward; (3) her leading petitioner to believe she would be filing his habeas petition for him; and, (4) her erroneously advising him there were no time constraints for filing a petition.  Id. at 320.

In contrast here, there was no allegation or evidence of Skelton's mental incompetency that would have impaired his ability to timely file his petition.  Moreover, Skelton does not

allege that any of his assigned attorneys refused to withdraw from his case, failed to alert him to pertinent judicial rulings in connection with his case, erroneously advised him as to deadlines for filing, or actively deceived him into believing his petition had in fact been filed.

Rather, this Court agrees with respondents and finds Schlueter v. Varner, supra, to be controlling based on similar factual circumstances.  In Schlueter, the petitioner argued that equitable tolling was warranted based on attorney malfeasance. Petitioner had sent his attorney a letter in November 1996, telling him of a January 16, 1997 filing deadline for his state PCR and requesting that the attorney file a timely PCR petition. The attorney responded that he was "well aware" of the state PCR filing deadline and that he would file a petition "before year's end."  The attorney likewise corresponded with the petitioner's parents stating that he intended to file a PCR petition "prior to the end of this year."  However, the attorney did not file the petition and did not communicate further with the petitioner or his parents.  In March 1997, the court clerk advised the petitioner, in response to the petitioner's inquiry, that no one had filed a PCR petition on his behalf.  The petitioner hired new counsel, who ultimately filed a PCR petition in state court alleging ineffective assistance of trial counsel based on a conflict of interest.  Schlueter, 384 F.3d at 72.

In rejecting Schlueter's argument for equitable tolling, the Third Circuit found that the Schlueter petitioner could have learned before the end of the year that his PCR petition had not been filed instead of waiting until the following March to make inquiry. If the petitioner had done so, he would still have had an opportunity to timely file a PCR petition. The Third Circuit distinguished the facts from Seitzinger, upon which the Schlueter petitioner relied, by noting that Seitzinger had been misled by what the attorney had affirmatively told her he did do, not by what the attorney said he *would* do. Schlueter, 384 F.3d at 76.

Specifically, the court found that, in December 1996, Schlueter's attorney had informed Schlueter and his parents that he anticipated filing a state PCR petition before the end of the year; thus, when the year ended, Schlueter could have learned that the petition was not filed and he still would have had time, albeit a small window of time, to file a pro se petition so as to save his PCR from being dismissed as untimely. Id. at 76.

Moreover, the Third Circuit found that

> Schlueter was fully aware of his PCRA rights in 1994 when he retained Lauer. Schlueter knew that Lauer had done little, if anything, to pursue PCRA relief for more than two years. Notwithstanding this knowledge, neither Schlueter nor his parents took affirmative steps to ensure the timely filing of a PCRA petition until Schlueter wrote his November 10, 1996 letter to Lauer advising him of the PCRA deadline and asking him to file a timely petition. Then after the end of 1996 Schlueter did not attempt to ascertain from Lauer prior to the January 16, 1997 deadline of which he was well aware whether Lauer, in fact, had filed a PCRA petition. We also find it significant that the period of limitations at issue in Seitzinger was a brief 90 days and that the attorney filed the complaint only one day late. Thus, the attorney's

20

> misconduct warranted equitably tolling one day of a short
> period of limitations.  Here, the AEDPA's limitation period
> is one year, and did not begin to run until April 24, 1996,
> nearly nine years after Schlueter's conviction became final
> in 1987.  Schlueter did not initiate state post-conviction
> proceedings until 1998 and did not pursue federal habeas
> corpus relief until 2000 even though he had been convicted
> in 1987.  The circumstances in Schlueter's case simply do
> not warrant the application of equitable tolling after such
> lengthy periods of time had elapsed following his conviction
> before he sought state and federal relief.

Schlueter, 384 F.3d at 77.

The facts in this case are strikingly similar.  Here,
Skelton likewise was well aware of the filing deadline associated
with his state PCR and likewise was aware that the different
assigned attorneys had done little if anything to pursue his PCR
over a significant period of time.  In fact, Skelton conveyed the
limitations deadline in his April 28, 1999 letter to counsel,
almost a year before his federal habeas limitations period would
have expired, yet Skelton took no affirmative steps to ensure
that his PCR petition was filed on time.

This Court also notes that, after Skelton sent his PCR
petition to the public defender to file on March 23, 1999, he
wrote to assigned counsel on only four occasions before the
limitations period expired on April 21, 2000, namely on April 28,
1999, May 11, 1999, January 6, 2000, and April 5, 2000, as set
forth above.  In each of these four letters, Skelton complained
about the lack of response from counsel and the length of time
that had elapsed since he sent his PCR petition to them in March
1999.  Thus, based on Skelton's knowledge that his counsel was

21

not responding to him on even a basic inquiry as to the filing of his petition, this Court finds that, had Skelton exercised reasonable diligence, he could have easily contacted the court to determine if his petition had been filed.  Had Skelton made just one simple inquiry to the state court in the nine or ten months after he sent his PCR petition to the public defender for filing, he would have learned that his petition had not been filed and he then could have filed his state PCR petition in a timely manner notwithstanding the alleged attorney misconduct.  See Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001)("While judges are generally lenient with pro se litigants, the Constitution does not require courts to undertake heroic measures to save pro se litigants from the readily foreseeable consequences of their own inaction."); see also Jones, 195 F.3d at 159-60.

Indeed, there is no question that Skelton knew of his assigned counsels' inaction and thus, at a minimum, had substantial reason to question their diligence in pursuing PCR. Instead, he chose to continue writing a few fruitless letters to counsel over the course of 20 months to his detriment, without undertaking the simple and reasonable act, in light of his knowledge of counsel's deficient performance, of making a direct inquiry to the court as to the filing of his PCR petition.  There is no suggestion that Skelton could not have communicated directly with the court, and thus, his lack of action in this regard, despite his otherwise articulate correspondence to

22

counsel, shows lack of reasonable diligence under the circumstances.

Moreover, it is significant that in this case, as opposed to the facts of Schlueter, Skelton's several assigned attorneys did not affirmatively misrepresent to him that his petition would be filed by a certain date.  They also did not deceive petitioner that the petition had been filed when it in fact had not been. As demonstrated by the factual record provided, Skelton's PCR attorneys did not communicate with petitioner at all.

Therefore, this Court is convinced that if Skelton had exercised reasonable diligence, he could have brought his claims in a timely fashion, notwithstanding the alleged misconduct of his attorneys.  This conclusion should not be misread, however, that this Court condones or excuses the conduct of petitioner's various assigned counsel, who were unresponsive to petitioner and the time constraints for filing his PCR.  Nevertheless, because Skelton was fully aware of his attorneys' derelictions and complained bitterly to them for more than a year but without taking any steps to contact the court about the filing or status of his petition, a simple and reasonable act under the circumstances, this Court finds that the link of causation between the attorneys' nonfeasance and the failure to timely file was broken, and that the attorneys' lapses, while more than a little troubling, did not rise to the level of extraordinary

circumstances that prevented petitioner from timely filing his petition.

Finally, in his motion for an evidentiary hearing, Skelton cites Holland v. Florida, __ U.S. __, 130 S.Ct. 2549, 2560 (2010), for the proposition that the one-year limitations period under AEDPA is subject to equitable tolling "in appropriate cases." (Docket entry no. 17-1). In its opposition, respondents argue that Holland does not change the law in the Third Circuit regarding equitable tolling. Rather, the facts in Holland only emphasize the deficiencies in Skelton's attempt to show "reasonable diligence" in pursuing his rights. (Docket entry no. 18).

Holland was decided June 14, 2010, after the parties completed briefing in this matter. In Holland, the Supreme Court held that § 2244(d) is subject to equitable tolling "in appropriate cases," where the petitioner demonstrates (1) that he has been pursuing his rights diligently, and (2) that some "extraordinary circumstances stood in his way and prevented timely filing." 130 S.Ct. at 2562 (quoting Pace, 544 U.S. at 418). In particular, the Supreme Court held that the Eleventh Circuit's standard -- that "no allegation of lawyer negligence or of failure to meet a lawyer's standard of care -- in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part --

can rise to the level of egregious attorney misconduct that would
entitle Petitioner to equitable tolling," (Id. at 2559-60) – was
too rigid and inflexible.  Id. at 2565.  In this regard, the
Court held that the propriety of a court's exercise of its
equitable powers should be made on a case-by-case basis.  Id. at
2563-64.  The Court further concluded that the facts establishing
attorney misconduct in the case before it could "well be an
extraordinary instance" supporting equitable tolling.  Id. at
2564.

Moreover, the Holland Court ruled that the diligence
required for equitable tolling is "reasonable diligence," not
"maximum feasible diligence."  130 S.Ct. at 2565.  The Court
found reasonable diligence on Holland's part under the
circumstances:

> Here, Holland not only wrote his attorney numerous letters
> seeking crucial information and providing direction; he also
> repeatedly contacted the state courts, their clerks, and the
> Florida State Bar Association in an effort to have [counsel]
> - the central impediment to the pursuit of his legal remedy
> -removed from his case.  And, the *very day* that Holland
> discovered that his AEDPA clock had expired due to
> [counsel's] failings, Holland prepared his own habeas
> petition pro se and promptly filed it with the District
> Court.

Id.

Consequently, the Court reversed the District Court's
determination that the matter was time-barred, and remanded the
case to the Eleventh Circuit to determine whether the facts
entitled Holland to equitable tolling, or whether further

proceedings, including an evidentiary hearing, might indicate that respondent should prevail. Id.

Following the instruction in Holland, this Court here has undertaken a fact-intensive examination of the record submitted by Skelton on the issue of equitable tolling. Like Holland, and as stated above, this case exceeds "garden variety attorney neglect." The failures of Skelton's six assigned counsel were serious. However, the Court cannot ignore petitioner's lapses in diligence. For instance, contrary to Holland, in this case, Skelton made no effort to contact the state court to confirm the filing of his PCR petition, a plainly reasonable and simple act he could have undertaken after the first nine months of non-activity or response from counsel when Skelton sent his fully-drafted PCR petition to the public defender. Indeed, Skelton could have filed his state PCR petition on his own, because in this case, he himself had prepared a lengthy, articulate and thorough petition, which he transmitted to the public defender to file on his behalf.[5] The New Jersey Court Rules expressly contemplate that petitions for postconviction relief can be filed by defendants pro se, even if, thereafter, the PCR petition is referred to the Public Defender's Office for assignment of

_____

[5] This Court again notes the March 16, 1999 letter to Ms. Torres, wherein Skelton states that he had filed the enclosed PCR petition and sought representation by counsel. This letter predates his March 23, 1999 letter to the local public defender in which he asks that the petition be filed on his behalf.

counsel.[6] Thus, in stark contrast to <u>Holland</u> where the petitioner took the initiative to contact the courts to obtain information about his appeal, here, Skelton never once contacted the court to investigate the status of his state PCR petition, despite his own admission that he was doubtful his attorneys followed his instructions and filed the petition.

In addition, unlike <u>Holland</u> where the petitioner prepared and filed his federal habeas petition on the very day he discovered that the "AEDPA clock" had expired, Skelton, who had every reason to check on the filing of his state PCR petition with the state court, failed to do so, allowing the AEDPA time clock to elapse for a significant period of time, almost 20 months (from April 21, 2000 to December 17, 2001) until his state PCR was filed, and then waiting 3½ months after his state PCR review had completed on September 24, 2008, before filing this federal habeas petition on January 14, 2009, despite full knowledge that his federal habeas limitations period had expired almost nine years earlier on April 21, 2000; as opposed to <u>Holland</u> where the lapse in time was merely five weeks.

Thus, where <u>Holland</u> does not change the law regarding equitable tolling, which requires that a petitioner must

---

[6] The New Jersey Rules of Court provide, in relevant part, that "[a]ny person convicted of a crime may . . . file with the criminal division manager's office of the county in which the conviction took place a petition for post-conviction relief captioned in the action in which the conviction was entered." <u>N.J. Ct. R.</u> 3:22-1.

demonstrate (1) that he has been pursuing his rights diligently, and (2) that some "extraordinary circumstances stood in his way and prevented timely filing," 130 S.Ct. at 2562, and where the facts alleged in this case by Skelton do not support a finding of reasonable diligence on his part in pursing his rights, regardless of the alleged attorney nonfeasance in failing to file the PCR petition on time, this Court finds that Skelton has not shown that the extraordinary circumstances of his attorneys' misconduct stood in his way and prevented him from timely filing his petition necessary to entitle him to equitable tolling.

The pleaded facts in this case do not establish that Skelton exercised reasonable diligence in bringing his claims. They do not come close to establishing that Skelton has "in some extraordinary way been prevented from asserting his . . . rights." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 168-19 (3d Cir. 1998). The pleaded facts also confirm that Skelton knew about the federal statute of limitations deadline well before it passed, that he was never told by counsel that his state PCR was filed and, in fact, was given every reason to doubt that his PCR petition had been filed. Further, being fully aware that his counsel were not responding to his inquiries about the filing of his petition, Skelton did nothing to confirm that fact directly with the state court, or to take the simple step of filing the PCR himself, after he had himself prepared a very thorough, detailed and articulate petition and brief. In

particular, the Court finds the March 16, 1999 letter that
Skelton sent to Ms. Torres, in which he stated that he had filed
a PCR petition, and in which he enclosed a copy of his detailed
PCR petition that he had himself prepared, to be indicative of
Skelton's lack of diligence in pursuing his rights, especially
since most of his correspondence with the public defenders
throughout the two year period before his PCR petition was
finally filed, were complaints about his dissatisfaction with
representation and their complete lack of activity and
communication on his case.

Consequently, given these facts as pled, this is not one of
the "rare situations" where equitable tolling "is demanded by
sound legal principles as well as the interests of justice."
Lacava, supra, 398 F.3d at 275.  Upon careful review, this Court
finds that Skelton's allegations of attorney misconduct, while
unquestionably grievous, do not present a case that could "well
be an extraordinary instance" supporting equitable tolling.
Holland, 130 S.Ct. at 2564.  Skelton had sufficient knowledge of
his attorneys' misconduct for almost a year before his AEDPA
deadline had expired.  He also admittedly was aware of the AEDPA
deadline and understood that his PCR petition had been filed more
than a year later, yet he did not file the instant federal habeas
petition until more than three months had passed after final
state court review of his PCR petition had concluded, and almost
nine years after the statutory period under AEDPA had expired.

Therefore, the Court concludes that this habeas petition is time-barred, and that Skelton is not entitled to equitable tolling.

The Court also finds that Skelton's motion for an evidentiary hearing should be denied as moot.  The factual record concerning attorney misconduct was fully presented by petitioner and there is no factual dispute by the parties in this regard that would necessitate an evidentiary hearing on the issue of whether such attorney misconduct constitutes extraordinary circumstances sufficient to justify equitable tolling, as this Court already has determined based on the facts presented by Skelton, and as set forth above, that it does not.

### IV.   CERTIFICATE OF APPEALABILITY

The Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable:  (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the

30

case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Id</u>.

For the reasons discussed above, this § 2254 habeas petition is clearly time-barred.  The Court also is persuaded that reasonable jurists would not debate the correctness of this conclusion. Consequently, a certificate of appealability will not be issued.

<u>CONCLUSION</u>

For the foregoing reasons, this Court finds that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 is time-barred pursuant to 28 U.S.C. § 2244(d).  No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(2). Petitioner's motion for an evidentiary hearing (Docket entry no. 17) will be denied as moot.  An appropriate order follows.

<u>s/Freda L. Wolfson</u>
FREDA L. WOLFSON
United States District Judge

DATED: April 13, 2011